# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SKINCURE ONCOLOGY, LLC, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>ROBERT F. KENNEDY JR., Secretary, United States Department of Health and Human Services, *et al.*,<br><br>*Defendants.* | ) | Civil Action No. 1:26-cv-00737 |

**DECLARATION OF KERWIN BRANDT**

I, Kerwin Brandt, solemnly declare under penalty of perjury and to the best of my knowledge, information, and belief as follows:

1. I am over 18 years of age and provide the testimony in this declaration based on my personal knowledge.

2. I am the Chief Executive Officer for and Co-Founder of SkinCure Oncology, LLC ("SkinCure") and have held this position since the company's founding. In this role, my job responsibilities include making major corporate decisions, maintaining the overall vision of the company, and overseeing daily operations.

3. SkinCure is the nation's leading provider of management and administrative services supporting dermatology practices that deliver a form of X-ray therapy for Nonmelanoma skin cancer ("NMSC") known as Image-Guided Superficial Radiation Therapy ("IGSRT").

4. SkinCure was founded in October 2016 and has grown substantially every year since – from ten dermatology practices offering IGSRT in January 2017 to, as of December 2025, 434 dermatology practice locations offering IGSRT – treating over 138,000 patients with IGSRT. Plaintiff SkinCure Oncology, LLC was incorporated in the State of Delaware and its principal

place of business is in the State of Illinois.

5. SkinCure's mission is to empower patients and dermatology practices by providing the highest level of education and expertise needed to deliver superior outcomes for NMSC, and we work closely with dermatology practices around the country to improve the availability of this highly effective and minimally-invasive treatment option. To fulfill this mission, until recently, SkinCure had more than 700 employees across the country serving oncology patients and providers.

6. SkinCure's services are designed to meet the advanced care needs of elderly, medically complex, and mobility-limited patients. Many patients treated with IGSRT are unable to undergo surgery due to advanced age, anticoagulation, cardiovascular disease, or other comorbidities.

7. For these vulnerable populations, access to office-based, non-invasive cancer therapy is essential. SkinCure enables community dermatology practices to deliver IGSRT locally, eliminating the need for patients to travel to distant hospital-based cancer centers or surgical facilities.

8. SkinCure's solution includes the provision and leasing of the FDA-cleared SRT-100 Vision™ device, buildout of dedicated shielded treatment suites, regulatory compliance, staffing of certified radiation therapists, and access to radiation oncologists for consultation. SkinCure does not provide clinical care or bill for medical services; instead, its dermatology practice partners deliver all IGSRT treatments.

9. Through its network of over 400 dermatology practices and more than 900 affiliated clinicians, SkinCure has supported the treatment of over 138,000 patients and the cure of more than 185,000 NMSC lesions, as of December 2025.

10. SkinCure's business model requires substantial capital investment, including

acquisition of advanced imaging and radiation equipment, construction of shielded vaults, and ongoing maintenance and quality assurance. By providing these resources and administrative support, SkinCure enables dermatology practices to more readily offer IGSRT within their communities.

11. NMSC is one of the most common cancers in the United States. The incidents of NMSC continue to rise, imposing a growing public health concern of significant impact to Medicare beneficiaries in particular.

12. IGSRT has repeatedly been found as medically reasonable and necessary for treating NMSC, is most commonly performed in outpatient dermatology settings for NMSC treatment, and has historically been reimbursed on a fee-for-service basis under the Medicare Physician Fee Schedule for Part B services.

13. On October 31, 2025, the Department of Health and Human Services, through the Centers for Medicare & Medicaid Services ("CMS") (collectively, the "Agency") issued a Final Rule which dramatically hinders the reimbursement process for IGSRT and will result in a catastrophic reduction in availability of NMSC treatment for Medicare beneficiaries.

14. The Final Rule took effect on January 1, 2026, and has caused and will continue to cause immediate and irreparable harm to vulnerable populations of Medicare patients and a staggering negative impact on SkinCure. The Final Rule has caused and will continue to cause SkinCure financial injury and continues to impede our goal of providing effective and innovative skin cancer treatment.

15. In advance of this Final Rule, the Agency solicited public comments on the Proposed Rule with a submission deadline of September 12, 2025, and received voluminous comments addressing coding, valuation, and payment implications for IGSRT and other surface radiation therapy services ("SRT").

16. SkinCure, along with a broad coalition of IGSRT stakeholders—including practicing dermatologists, radiation therapists, medical physicists, and patient advocates—submitted detailed comment letters to the Agency outlining the clinical, operational, and financial flaws in the proposed coding and valuation for IGSRT. A true and accurate copy of SkinCure's Comment Letter is attached hereto as Exhibit 1.

17. In SkinCure's timely submitted comments (designated as Comment ID CMS-2025-0304-13215 and Comment ID CMS-2025-0304-13226), I emphasized that the Proposed Rule would "disrupt established clinical protocols that are essential to the documented efficacy of IGSRT and would make the continued office-based delivery of this treatment financially unsustainable." I further explained that the new current procedural terminology ("CPT") codes for "surface radiation therapy" inappropriately aggregate fundamentally distinct technologies—IGSRT, non-image-guided SRT, and electronic brachytherapy—into a single coding structure, disregarding critical differences in workflow, technology, and required services.

18. SkinCure and other stakeholders provided extensive evidence that IGSRT is a clinically distinct, image-guided, and adaptively managed modality, requiring per-fraction high-resolution dermal ultrasound (HRDUS) imaging, multidisciplinary staffing, and advanced equipment. They explained that the proposed codes and relative value units ("RVUs") do not account for the unique work and resource requirements of IGSRT, including per-fraction imaging, radiation therapist labor, custom shielding, QA/medical physics oversight, and device maintenance.

19. Multiple comment letters—including those from leading dermatology practices, medical societies such as DART, and individual clinicians and physician-scientists—highlighted that the Proposed Rule would force physicians to deviate from established IGSRT protocols, which require per-fraction HRDUS imaging to achieve >99% local control rates. Stakeholders warned

that undervaluing physician work and practice expenses would jeopardize the sustainability of office-based IGSRT programs, diminish patient choice, and compromise the quality of care provided.

20. Stakeholders also identified serious procedural flaws in the CPT and relative value scale update committee valuation process. SkinCure and others documented that dermatology-led IGSRT programs were excluded from meaningful participation in the CPT/RUC survey process, and that the survey respondents had no practical experience with IGSRT or surface radiation therapies. The resulting codes and valuations were therefore based on inaccurate assumptions, flawed crosswalks, and the perspectives of competing specialties with direct financial interests in limiting IGSRT adoption and use.

21. Commenters further explained that the Proposed Rule's reliance on hospital outpatient prospective payment system cost proxies for practice expense RVUs is inappropriate for IGSRT, which is delivered almost exclusively in office-based dermatology settings. As I explained in SkinCure's letter, "Hospital outpatient APC proxies are tailored to services provided within large, facility-based settings and do not account for the resource profile inherent to office-based dermatology. IGSRT is administered almost exclusively through office-based practices, with 96% of claims submitted by dermatologists or skin specialists and fewer than 2% by radiation oncologists."

22. Stakeholders provided detailed cost data, workflow protocols, and clinical evidence demonstrating that the proposed codes and valuations would not cover the actual costs of providing IGSRT in accordance with established standards of care. For example, SkinCure's analysis showed that the manufacturer's suggested retail price for an IGSRT system is approximately $549,000, with up to $100,000 in additional costs for vault construction, shielding, and regulatory compliance—far exceeding the capital cost assumptions used by the Agency.

23. Despite these comment letters raising well founded concerns, the Agency issued the Final Rule at issue here, which was published in the Federal Register on November 5, 2025 – CY 2026 MPFS Final Payment Rule, 90 Fed. Reg. 49266 (Nov. 5, 2025), and took effect on January 1, 2026. In doing so, the Agency's Final Rule failed to address the core concerns raised by SkinCure and the broader IGSRT community.

24. The Final Rule's coding and valuation framework materially reduces payment for office-based IGSRT and thereby threatens the viability of IGSRT programs across SkinCure's network.

25. The Final Rule has and will continue to fundamentally disrupt SkinCure's ability to support office-based IGSRT programs. The new CPT coding family (77X05, 77X07, 77X08, 77X09) and associated RVUs fail to account for per-fraction imaging, multidisciplinary staffing, fixed-install equipment and shielding, and the adaptive workflow that defines IGSRT—rendering the treatment clinically, financially, and operationally unfeasible for SkinCure and its practice partners.

26. The Final Rule's bundling decision to assign Procedure Status "B" (non-payable technical component) to 77X09 and to fold ultrasound practice expense into treatment delivery codes (77X07/77X08) eliminates separate technical payment for imaging, even though IGSRT protocols require HRDUS before and at each fraction to achieve high local-control rates. This deprives practices of reimbursement for costs they must still incur to deliver IGSRT safely and effectively.

27. The Final Rule's reliance on outpatient prospective payment system ambulatory payment classification ("APC") relative weights (APCs 5621 and 5732) to set practice-expense RVUs for non-facility IGSRT services, and its "per course of treatment" limitation for ultrasound image guidance, contradict the prevailing delivery setting and clinical workflow documented in

CMS claims data and the peer-reviewed literature. CMS itself acknowledges that SRT/IGSRT are "infrequently provided in the hospital setting" (≈ 2% of cases), yet it imports facility-based cost relationships to office-based care and restricts imaging frequency central to IGSRT's efficacy. The result is an artificial under-valuation of the treatment.

28. Alongside the Final Rule, the Agency has also overseen the issuance of local coverage determinations ("LCDs") and billing and coding articles which will further restrict Medicare coverage for IGSRT.

29. On May 15, 2025, five Medicare administrative contractors ("MACs") posted virtually identical proposed LCDs addressing Medicare coverage for IGSRT, titled "Superficial Radiation Therapy (SRT) for the Treatment of Nonmelanoma Skin Cancers." *See* DL40168, DL40176, DL40179, DL40189, DL40193. The proposed LCDs threatened to effectively eliminate coverage for IGSRT by deeming image-guided SRT not reasonable and necessary, viewing IGSRT as interchangeable with non-image-guided SRT and electronic brachytherapy, restricting coverage to narrow categories of non-surgical candidates, and imposing provider-qualification requirements that would shift IGSRT away from office-based dermatology practices to radiation oncology centers.

30. During the notice-and-comment period, SkinCure and other stakeholders submitted comments identify the proposed LCDs' substantial clinical, legal, and procedural flaws. SkinCure specifically documented the peer-reviewed evidence supporting IGSRT, the clinical necessity of imaging for NMSC treatment, and the serious risks to patient access if the LCDs were finalized without change. SkinCure also criticized the proposed LCDs' evidentiary demand for randomized control tests as infeasible and unethical for IGSRT.

31. Despite these detailed comments raising significant issues, the MACs finalized the proposed LCDs without material changes. The Final LCDs, issued on January 15, 2026, and

scheduled to take effect on March 1, 2026, are nearly identical across the five MACs and retain the same categorical denial of image guidance, arbitrary coverage restrictions, and restrictive provider-qualification requirements.

32. If not corrected, the Final LCDs will eliminate coverage for IGSRT in the five MACs' covered jurisdictions, causing SkinCure significant financial injuries and harming a considerable number of beneficiaries who need access to this critical treatment.

33. After issuing the Final LCDs, the five MACs issued corresponding billing and coding articles ("Billing Articles") which further compound the coordinated Agency refusal to reimburse for IGSRT. Billing and coding articles are supplemental documents that provide guidance, billing instructions, and other non-clinical clarifications to support the implementation of an LCD.

34. The Billing Articles state that billing code G6001 (ultrasonic guidance for placement of radiation therapy fields) is not medically reasonable and necessary and therefore not covered. This determination follows the Agency's Final Rule, which replaced G6001 with the four new codes—77X05, 77X07, 77X08, and 77X09—after "G6001 was identified by the RAW [Relativity Assessment Workgroup] via the CMS/Other Medicare utilization over 20,000 screen." 90 Fed. Reg. at 49386.

35. These Billing Articles, which apply to claim submission and reimbursement, further implement the Agency's policy reflected in the Final Rule and Final LCDs that "[i]t is not appropriate to bill Medicare" for IGSRT.

36. If not corrected, the Billing Articles will further eliminate coverage for IGSRT in the five MACs' covered jurisdictions, causing SkinCure significant financial injuries and harming a considerable number of beneficiaries who need access to this critical treatment

37. The Final Rule, Final LCDs, and Billing Articles will impact SkinCure at every

level. Indeed, as a result of these actions, SkinCure has already issued at least 67 letters of termination to its employees and is expected to be forced to lay off additional employees.

38. There are no individuals or entities who could serve as proxies and channel SkinCure's claims through the Agency because neither beneficiaries nor providers are aligned with SkinCure's unique interests and they have no incentive to pursue SkinCure's claims before the Agency. SkinCure also does not have access to the administrative appeals channels within the Agency and thus cannot channel any claims raised in this action through the Agency's review process.

Pursuant to the requirements of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

March 4, 2026
Date

KERWIN BRANDT
Chief Executive Officer