# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SKINCURE ONCOLOGY, LLC, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>ROBERT F. KENNEDY JR., Secretary, United States Department of Health and Human Services, *et al.*,<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:26-cv-00737 |

**DECLARATION OF MATTHEW BASSETT**

I, Matthew Bassett, solemnly declare under penalty of perjury and to the best of my knowledge, information, and belief as follows:

1. I am over 18 years of age and provide the testimony in this declaration based on my personal knowledge.

2. I am the Executive Director of PatientsACT.org Inc. ("PatientsAct"). My responsibilities include guiding the organization's strategic direction, overseeing day-to-day operations, and making critical organizational decisions.

3. PatientsAct is a nonprofit, nonstock corporation incorporated in the State of Delaware. It is organized and operated exclusively for the promotion of social welfare under Section 501(c)(4) of the Internal Revenue Code. The organization is managed by a Board of Directors, and its advocacy activities are undertaken in furtherance of this mission.

4. PatientsAct's core mission is to educate and advocate for patients' safety rights and freedom of choice in treatment options. The organization works to ensure that all patients receive optimal care for their specific conditions and to advance a healthcare system that prioritizes patients above all other interests.

5. Image-guided superficial radiation therapy ("IGSRT") is a non-invasive treatment option used by many patients whose interestes we represent, particularly for non-melanoma skin cancers. It uses ultrasound imaging to target radiation, minimizing damage to surrounding healthy tissue.

6. For many of the patients that PatientsAct represents, IGSRT is a critical medical treatment. It is particularly important for patients with lesions in sensitive areas, such as the face, or for individuals who are poor candidates for surgery due to age, comorbidities, or other factors. The ability to receive this treatment in an outpatient setting is a significant benefit for the patients we represent, allowing for continuity of care and minimizing disruption to their lives.

7. PatientsAct represents thousands of patients across the United States. A substantial portion of these patients are Medicare beneficiaries who suffer from conditions for which IGSRT is a medically necessary treatment. IGSRT has repeatedly been found as medically reasonable and necessary for treating non-melanoma skin cancer ("NMSC"), is most commonly performed in outpatient dermatology settings, and has historically been reimbursed on a fee-for-service basis under the Medicare Physician Fee Schedule for Part B services.

8. On October 31, 2025, the Department of Health and Human Services, through the Centers for Medicare & Medicaid Services ("CMS") (collectively, the "Agency"), issued its 2026 Medicare Physician Fee Schedule Rule ("Final Rule"). The Rule will significantly impair reimbursement for IGSRT, effectively denying Medicare beneficiaries access to this crucial NMSC treatment.

9. PatientsAct submitted a comment (designated as Comment ID CMS-2025- 0304-14044) in advance of the September 12, 2025, public comment deadline. In its comment, PatientsAct detailed numerous deficiencies in the Rule, focusing in particular on the harm it will cause to Medicare patients, including elderly, medically vulnerable, and rural beneficiaries. A true

and correct copy of PatientsAct's Comment Letter is attached hereto as Exhibit 1.

10. Despite PatientsAct's comments—and those of numerous other stakeholders—identifying serious defects in the proposed Rule, the Agency published the Final Rule on November 5, 2025, in the Federal Register. *See* CY 2026 MPFS Final Payment Rule, 90 Fed. Reg. 49,266 (Nov. 5, 2025). The Final Rule took effect on January 1, 2026, yet failed to address the defects identified by PatientsAct or many other commenters.

11. In parallel with the Final Rule, the Agency facilitated the rollout of local coverage determinations ("LCDs") and related Billing and Coding Articles ("Billing Articles") that further constrict Medicare coverage for IGSRT.

12. On May 15, 2025, five Medicare administrative contractors ("MACs") released nearly identical proposed LCDs entitled "Superficial Radiation Therapy (SRT) for the Treatment of Nonmelanoma Skin Cancers." *See* DL40168, DL40176, DL40179, DL40189, DL40193. The proposed LCDs concluded that IGSRT is not medically reasonable or necessary, except in limited circumstances, and designates Mohs Micrographic Surgery as the front-line NMSC approach.

13. As with the Rule, PatientsAct timely submitted a comment identifying deficiencies in the proposed LCDs, emphasizing the harm to patients if this office-based, non-surgical NMSC treatment—particularly critical for patients in rural and underserved communities—was no longer covered by Medicare.

14. Despite PatientsAct's comment and those of other stakeholders, the Final LCDs—issued on January 15, 2026, and effective March 1, 2026—are materially identical to the proposed LCDs.

15. Following issuance of the Final LCDs, the five MACs released the Billing Articles that further reinforce the coordinated refusal to reimburse for IGSRT. These Billing Articles are supplemental materials that provide billing guidance, implementation instructions, and

non-clinical clarifications in support of the Final LCDs, and together with the Final Rule and Final LCDs implements the restrictive coverage policy established by the Agency.

16. The Agency Action will directly frustrate PatientsAct's core mission. Our organization was founded to advocate for patients' freedom of choice and to ensure access to optimal care. By eliminating coverage for a critical, non-invasive treatment option, the Agency's Action directly undermines this mission.

17. Responding to this Agency Action will force PatientsAct to divert a significant portion of its limited resources—including staff time, funds, and advocacy efforts—away from other important patient education and support programs. This directly impairs our ability to serve patients across a range of other issues.

18. Furthermore, if PatientsAct is unable to prevent this loss of coverage, it will damage our credibility and effectiveness in the eyes of the patients we reprsent. Our ability to represent patients' interests is predicated on being able to protect their access to essential care. This action threatens to diminish patient engagement and trust in our organization.

19. Healthcare providers cannot and will not offer services for which they receive no payment from a patient's insurer. Because a large number of patients who require IGSRT are Medicare beneficiaries, the elimination of Medicare reimbursement will make it financially untenable for most dermatology and radiation oncology practices to continue offering this service. As a result, patient access will be eliminated or severely curtailed, directly harming the patients we represent.

20. There are no individuals or entities who could serve as proxies and channel PatientsAct's claims through the Agency because neither beneficiaries nor providers are aligned with PatientsAct's unique interests and they have no incentive to pursue PatientsAct's claims before the Agency. PatientsAct also does not have access to the administrative appeals channels

within the Agency and thus cannot channel any claims raised in this action through the Agency's review process.

21. PatientsAct has undertaken significant outreach efforts to educate patients about the impending loss of coverage and to understand the full scope of the potential impact. We are actively collecting data and personal testimonials from patients and providers who will be affected.

22. The patients we represent rely on consistent and predictable Medicare coverage to access IGSRT. For many, this is not an elective procedure but a necessary medical intervention to treat their cancer. Loss of coverage would create an insurmountable financial barrier for a significant number of patients, forcing them to either forgo necessary treatment or choose more invasive and higher-risk alternatives. This reliance is particularly acute for patients who are already undergoing a cycle of IGSRT treatment or will require future cycles of IGSRT.

23. The elimination of Medicare coverage for IGSRT will cause direct, immediate, and severe harm to the patients that PatientsAct represents. These harms are not speculative; they are the foreseeable consequences of withdrawing coverage for a medically necessary treatment relied upon by thousands of Medicare beneficiaries.

24. Without Medicare coverage, many providers will cease to offer IGSRT, drastically reducing its availability. Patients will be forced to either forgo treatment or accept more invasive alternatives like surgery, which may carry higher risks of complications, scarring, or infection, particularly for elderly patients or those with multiple health conditions.

25. The cost of a full cycle of IGSRT treatment, while less than the cost of Mohs Micrographic Surgery, is still substantial. Without Medicare coverage, the vast majority of the patients we represent will be unable to afford it, effectively denying them access to care.

26. For patients currently undergoing IGSRT, the loss of coverage mid-treatment would be catastrophic, forcing an abrupt halt to their care plan and creating uncertainty and

distress.

27. The Agency Action will disproportionately harm elderly patients, who are often poor surgical candidates and for whom IGSRT is the safest and most effective option. These patients are also often on fixed incomes and least able to bear the cost of treatment themselves or travel long distances to find alternative care.

Pursuant to the requirements of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

03/04/2026
Date

Matthew Bassett
Executive Director