# EXHIBIT J

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SKINCURE ONCOLOGY, LLC, *et al.*, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | Civil Action No. __________________ |
| | ) | |
| ROBERT F. KENNEDY JR., Secretary, United States Department of Health and Human Services, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

**DECLARATION OF PERRY BAKER**

I, Perry Baker, solemnly declare under penalty of perjury and to the best of my knowledge, information, and belief as follows:

1. I am over 18 years of age and provide the testimony in this declaration based on my personal knowledge.

2. I am the Chief Financial Officer for SkinCure Oncology, LLC. In this role, my job responsibilities include being familiar with the financial condition of the company for which I am responsible and understanding the impact that a significant change in cost structure will have on the financial health of the company. I have over 25 years of finance and accounting experience.

3. SkinCure is the nation's leading provider of management and administrative services supporting dermatology practices that deliver a form of X-ray therapy for Nonmelanoma skin cancer ("NMSC") known as Image-Guided Superficial Radiation Therapy ("IGSRT").

4. SkinCure's business model requires substantial capital investment, including acquisition of advanced imaging and radiation equipment, construction of shielded vaults, and ongoing maintenance and quality assurance. By providing these resources and administrative

support, SkinCure enables dermatology practices to more readily offer IGSRT within their communities. This business model is driven by the more than 700 employees that currently work for SkinCure.

5. IGSRT is a form of X-ray therapy most commonly performed in outpatient dermatology settings and reimbursed on a fee-for-service basis under the Medicare Physician Fee Schedule for Part B services. 42 U.S.C. § 1395l(a)(1); 42 C.F.R. § 410.35.

6. On October 31, 2025, the Department of Health and Human Services, through the Centers for Medicare & Medicaid Services (collectively, the "Agency") issued a Final Rule which dramatically hinders the reimbursement process for IGSRT and will result in a catastrophic reduction in availability of NMSC treatment for Medicare beneficiaries. MPFS Final Payment Rule for CY 2026, 90 Fed. Reg. 49266 (Nov. 5, 2025).

7. The Final Rule took effect on January 1, 2026, and has and will continue to fundamentally disrupt SkinCure's ability to support office-based IGSRT programs. The new current procedural terminology coding family (77X05, 77X07, 77X08, 77X09) and associated relative value units fail to account for per-fraction imaging, multidisciplinary staffing, fixed-install equipment and shielding, and the adaptive workflow that defines IGSRT—rendering the treatment clinically, financially, and operationally unfeasible for SkinCure and its practice partners.

8. The Final Rule's bundling decision to assign Procedure Status "B" (non-payable technical component) to 77X09 and to fold ultrasound practice expense into treatment delivery codes (77X07/77X08) eliminates separate technical payment for imaging, even though IGSRT protocols require high-resolution dermal ultrasound imaging before and at each fraction to achieve high local-control rates. This deprives practices of reimbursement for costs they must still incur to deliver IGSRT safely and effectively.

9. Alongside the Final Rule, the Agency has also overseen the issuance of local

coverage determinations ("LCDs") and billing and coding articles which will further restrict Medicare coverage for IGSRT and harm SkinCure.

10. On May 15, 2025, five Medicare administrative contractors ("MACs") posted virtually identical proposed LCDs addressing Medicare coverage for IGSRT, titled "Superficial Radiation Therapy (SRT) for the Treatment of Nonmelanoma Skin Cancers." *See* DL40168, DL40176, DL40179, DL40189, DL40193. The proposed LCDs threatened to effectively eliminate coverage for IGSRT by deeming image-guided SRT not reasonable and necessary, viewing IGSRT as interchangeable with non-image-guided SRT and electronic brachytherapy, restricting coverage to narrow categories of non-surgical candidates, and imposing provider-qualification requirements that would shift IGSRT away from office-based dermatology practices to radiation oncology centers.

11. Despite detailed comments from stakeholders—including SkinCure—raising substantive issues with the proposed LCDs, the MACs finalized the proposed LCDs without material change. The Final LCDs, issued on January 15, 2026, took effect on March 1, 2026, and are nearly identical across the five MACs and retain the same categorical denial of image guidance, arbitrary coverage restrictions, and restrictive provider-qualification requirements.

12. After issuing the Final LCDs, the five MACs issued corresponding billing and coding articles ("Billing Articles") which further compound the coordinated Agency refusal to reimburse for IGSRT. Billing and coding articles are supplemental documents that provide guidance, billing instructions, and other non-clinical clarifications to support the implementation of an LCD.

13. The Billing Articles state that billing code G6001 (ultrasonic guidance for placement of radiation therapy fields) is not medically reasonable and necessary and therefore not covered. This determination follows the Agency's Final Rule, which replaced G6001 with the four

new codes—77X05, 77X07, 77X08, and 77X09—after "G6001 was identified by the RAW [Relativity Assessment Workgroup] via the CMS/Other Medicare utilization over 20,000 screen." 90 Fed. Reg. at 49386.

14. These Billing Articles, which apply to claim submission and reimbursement, further implement the Agency's policy reflected in the Final Rule and Final LCDs that "[i]t is not appropriate to bill Medicare" for IGSRT.

15. The financial impact of the Final Rule, Final LCDs, and Billing Articles is immediate and severe. SkinCure's analysis of Medicare Part B payment for a single-lesion IGSRT course shows current reimbursement of approximately $11,922 (CY 2025). Under the Final Rule's code family and RVUs, Medicare payment would drop to approximately $3,692 beginning January 1, 2026—a nearly 70% decrease for the same course of care. Given SkinCure's management-fee structure (≈ 54% of total reimbursements paid by practice partners), SkinCure's revenue per course would fall from roughly $6,438 to $1,993.

16. SkinCure's injuries are concrete and irreparable. SkinCure is a non-clinical management entity that finances and administers the capital, personnel, and compliance infrastructure that dermatology practices need to deliver IGSRT—e.g., leasing the SRT-100 Vision™ units, building and maintaining shielded vaults, supplying certified radiation therapists, and coordinating medical physics and regulatory components.

17. The payment reductions caused by this coordinated Agency action will force contract terminations, program pauses, or permanent closures across SkinCure's practice network, causing lost revenue streams, stranded capital, and harm to business reputation and goodwill that cannot be remedied by post-hoc damages.

18. In light of the Final Rule, Final LCDs, and Billing Articles, SkinCure has already issued 64 letters of termination and laid off 60 employees, and expects additional layoffs to be

forthcoming.

Pursuant to the requirements of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

2/27/26
Date

Perry Baker
Chief Financial Officer