**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SKINCURE ONCOLOGY, LLC, *et al.*,

Plaintiffs,

v.

ROBERT F. KENNEDY, JR., *et al.*,

Defendants.

Civil Action No. 26-0737 (RC)

**DECLARATION OF JUAN L. SCHAENING PEREZ, M.D.**

I, Juan L. Schaening Perez, pursuant to 28 U.S.C.§ 1746, and based upon my personal knowledge and information that I have reviewed in the records of my employer, WPS Health Solutions, hereby make the following declaration with respect to the above-captioned matter:

1. I am a Diplomate of the American Board of Internal Medicine. I obtained my American Board of Internal Medicine certification in 1998. I earned my M.D. degree from the University of Puerto Rico School of Medicine, specializing in Internal Medicine. I have devoted over twenty years of my professional career to serving in Medical Director positions for Medicare Administrative Contractors.

2. Medicare Administrative Contractors across the country process over one billion Medicare Part A and Part B claims for reimbursement every year, which may be submitted by Medicare providers (such as hospitals and nursing homes), Medicare suppliers (such as physicians and equipment suppliers), or individual Medicare beneficiaries. In addition to claims-processing responsibilities, Medicare Administrative Contractors enroll providers and suppliers into the Medicare program, conduct pre- and post-payment audits and medical reviews to ensure the proper

payment of claims, provide training to Medicare stakeholders to ensure compliance with CMS's requirements and the proper payment of claims, handle redeterminations (the first stage of Medicare appeals for denied claims), and develop and issue local coverage determinations to define if items and services provided to Medicare beneficiaries are reasonable and necessary under applicable statutes and regulations.

3. Each Medicare Administrative Contractor handles a specific geographic jurisdiction. Currently, there are seven Medicare Administrative Contractors: (1) Wisconsin Physicians Service Insurance Corporation, also known as WPS Health Solutions (WPS); (2) CGS Administrators, LLC (CGS); (3) National Government Services, Inc. (NGS); (4) Noridian Healthcare Solutions, LLC, (Nordian); (5) Palmetto GBA (Palmetto); (6) First Coast Service Options, Inc. (First Coast); and (7) Novitas Solutions, Inc. (Novitas).

4. Presently, I am the Contractor Medical Director for WPS. WPS handles Jurisdictions J5 (Iowa, Nebraska, Kansas and Missouri) and J8 (Indiana and Michigan). I am also the key personnel Medical Director for J5. J5 administers 5.3 percent of the national Medicare Part A and Part B workload, and J8 administers about 4.3 percent. I have held the position of Contractor Medical Director at WPS since May 2023.

5. Previously, I held two roles at First Coast, the current Jurisdiction N Medicare Administrative Contractor. Jurisdiction N covers Florida, Puerto Rico, and the U.S. Virgin Islands. It typically issues 20.5 billion dollars of Medicare Part A and Part B benefit payments annually. From July 2017 through May 2023, I served as the Executive Contractor Medical Director at First Coast. From March 2009 through July 2017, I served as the Contractor Medical Director (including as a subcontractor for Triple S during part of this time). In both positions, I worked with contractor staff on policy development, coverage, and pricing issues, among other responsibilities.

6. In addition, from December 2003 through February 2009, I served as the Medicare Part B Carrier Medical Director for Triple-S. At the time, Triple-S was the Medicare Part B carrier for Puerto Rico and the U.S. Virgin Islands. Carriers are now known as Medicare Administrative Contractors. At Triple-S, I developed local coverage determinations, among other responsibilities.

7. Among my other responsibilities in my current role as the Contractor Medical Director at WPS, and as relevant here, I oversee the development and issuance of proposed and final local coverage determinations. Starting in July 2024, I led the Medicare Administrative Contractor workgroup that developed and issued local coverage determinations that involve the add-on component of high resolution ultrasound imaging scans when providing superficial radiation therapy for the treatment of non-melanoma skin cancers. These are the local coverage determinations that I discuss in the remainder of this Declaration, which are titled "Superficial Radiation Therapy (SRT) for the Treatment of Nonmelanoma Skin Cancers (NMSC)."

8. In addition to WPS, Medicare Administrative Contractors CGS, NGS, Noridian, and Palmetto also participated in the workgroup on the local coverage determinations. First Coast and Novitas did not participate, nor, to date, have they issued any local coverage determinations regarding the use of high resolution ultrasound in connection with the provision of superficial radiation therapy. The five participating Medicare Administrative Contractors developed the local coverage determinations under the reasonable and necessary provision of the Social Security Act, Section 1862(a)(1)(A). We prioritized the development of these local coverage determinations based on data analysis that showed possible overutilization due to a 50% spike growth in the utilization of superficial radiation therapy with high resolution ultrasound guidance, in comparison to the estimated 35% growth of patients with non-melanoma skin cancers (from 2018 to 2023).

9. In our development and issuance of the local coverage determinations, the five Medicare Administrative Contractors participating in the workgroup followed statutory requirements and CMS's guidance set forth in Chapter 13 of the Medicare Program Integrity Manual. We completed a rigorous review of the evidence, met with subject matter experts who served on a Multi-MAC Evidentiary Contractor Advisory Committee held in October 17, 2024, issued the proposed local coverage determinations with the required public comment period (which ran from May 15, 2025 through June 28, 2025), conducted an open meeting (held on June 10, 2025), published responses to comments on the proposed local coverage determinations, and published the final local coverage determinations with another public notice period (which ran from January 15, 2026, through February 28, 2026). The proposed and final local coverage determinations were posted on CMS's public Medicare Coverage Database during the public comment period (for the proposed determination) and during the public notice period (for the final determination). The final local coverage determinations became effective on March 1, 2026.

10. Because of our collaborative efforts, each contractor's local coverage determination contains the same information. Before issuing the final local coverage determinations, each contractor also published our identical responses to the comments that we received on the proposed local coverage determinations. All contractors also issued identical billing and coding articles, which provide technical guidance and education to stakeholders on how to implement the local coverage determinations. The local coverage determinations (proposed and final), responses to comments, and billing and coding articles are all publicly available on the online Medicare Coverage Database.

11. Neither the Secretary of Health and Human Services nor CMS instructed us to issue the proposed or final local coverage determinations, the responses to comments, or the related billing and coding articles that implement the determinations.

12. As part of the workgroup's process, we convened a Contractor Advisory Committee on October 17, 2024. Twelve subject matter experts from diverse groups served on the Committee. The twelve included SkinCure Oncology LLC's co-founder, Daniel Ladd, Jr., D.O., and Jacob Scott, M.D. Drs. Ladd and Scott were the only two Committee members to vote in favor of covering high resolution ultrasounds in connection with superficial radiation therapy. Drs. Ladd and Scott are both affiliated with an organization known as Dermatology Association of Radiation Therapy, which also opposed the local coverage determinations.

13. Based on feedback from stakeholders, and pre-dating this lawsuit, the Medicare Administrative Contractors, including WPS, identified the need for a minor technical amendment to the final local coverage determinations. Due to timeframes for necessary approvals, all five Medicare contractors issued the same amendment to the local coverage determinations on March 19, 2026. The amended version of the final local coverage determination is available on the Medicare Coverage Database. The minor technical amendment involves a single clause to a single sentence of the local coverage determinations. The amendment clarifies that, for the reasonable and necessary provision of superficial radiation therapy, appropriately trained providers include those who completed "a qualified dermatology program and the dermatologist has didactic training and clinical experience in radiation treatment."

14. The local coverage determinations ensure access to superficial radiation therapy as a treatment option for non-melanoma skin cancers in non-surgical patients. The local coverage determinations do not allow Medicare coverage for high resolution ultrasound provided in

connection with superficial radiation therapy, as there is insufficient evidence to demonstrate that high resolution ultrasound guidance improves outcomes of superficial radiation therapy treatment. High-resolution ultrasound scans do not treat cancer, radiation does. Medicare coverage for superficial radiation therapy as a treatment option for non-melanoma skin cancers in non-surgical patients remains in place.

15. In addition to not altering the availability of coverage of radiation therapy, other alternatives such as simple surgical excision, electrodessication and curettage, Mohs surgical excision or surgical excision with peripheral and deep en face margin assessment (PDEMA) are available and are currently the standard of care treatments for surgical candidates. Excision procedures also offer the benefit of surgical margins to be evaluated and ensure complete removal of the lesion, and only require a single patient visit rather than daily visits needed to complete superficial radiation therapy, with or without high resolution ultrasound. Furthermore, if the providers wish to use high resolution ultrasound (albeit not necessary) in administering superficial radiation therapy, they can still provide that service; however, there will be no additional payment allowance for high resolution ultrasound image guidance since it is not reasonable and necessary because high resolution ultrasound guidance in connection with superficial radiation therapy lacks quality peer reviewed evidence that it improves outcomes in the population with low risk lesions for whom superficial radiation therapy is appropriate. The superficial radiation therapy machines used to deliver the radiation treatment spare deeper structures and are ideal for treating cutaneous malignancies. Superficial radiation therapy is not indicated for advanced basal cell carcinoma (BCC), advanced squamous cell carcinoma (SCC), or cutaneous non-melanoma skin cancers with depth greater than 6 mm.

16. There is a lack of standardization for the use of high resolution ultrasound guidance to detect fraction of a millimeter changes that correlate with histological findings. Superficial radiation therapy is appropriate for a population of patients that has visible low risk lesions of small depths of less than 6mm. This questions the need for image guidance and of monitoring the depth fluctuations of such lesions. Such lesions are unlikely to have a measurable change on a day-by-day basis and therefore it is also unlikely that the daily fractionation regimens would be altered based solely upon high resolution ultrasound guidance findings. Deep lesions are contraindicated for superficial radiation therapy treatment, and there should be a radiation treatment plan for the depth of the lesion as established by biopsy. Image guidance was originally intended to protect deep proximal organs or critical structures from being targeted by radiation therapy. Deeper structures are inherently spared by superficial radiation therapy due to the superficial nature of the treatment.

17. Upon review of the superficial radiation therapy literature there are significant methodological flaws in the study designs that create very low confidence in the reported results. Using the standardized methodology of Cochrane risk of bias assessment, which is a structured framework used in systematic reviews to evaluate the internal validity of randomized controlled trials, the studies to support high resolution ultrasound guidance are rated as at high risk of bias. In addition, they rely on largely retrospective data and there are no direct comparisons with standard care treatments for non-melanoma skin cancers, such as Mohs micrographic surgery or standard surgical excision. This results in low quality evidence that does not align with the reasonable and necessary criteria for coverage in Medicare. Prospective comparison studies that directly compare superficial radiation therapy with the addition of high resolution ultrasound guidance and surgery in well-matched patient groups are needed to enable conclusions on

comparative outcomes. In addition, there are no validated protocols for assessing tumor depth by ultrasound nor correlation of ultrasound tumor depth with microscopic tumor invasion; there is no evidence to support that the addition of high resolution ultrasound guidance to superficial radiation therapy is required for the treatment of low-risk BCC or low-risk SCC. The comparative safety and effectiveness of using superficial radiation therapy with high resolution ultrasound guidance cannot be determined because available comparison studies are at high risk of bias. Additionally, long-term safety cannot be determined, since the data regarding use of ultrasound with superficial radiation therapy is largely short-term, does not include the risk of radiation exposure, and does not fully address the recurrence rates of lesions treated with superficial radiation therapy with the high resolution ultrasound add-on, as compared to standard of care treatment.

18. SkinCure Oncology, LLC, through their attorneys, requested reconsideration of the final local coverage determinations on March 2, 2026. Its request for reconsideration with WPS is pending. To the best of my knowledge, PatientsACT has not sought reconsideration of the local coverage determination with WPS.

I declare under penalty of perjury that the above statements are true and correct.

MD

________________________________

Executed on this 20th day of March, 2026