**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SKINCURE ONCOLOGY, LLC, *et al.*,

*Plaintiffs,*

v.

ROBERT F. KENNEDY JR.,
Secretary, United States Department
of Health and Human Services, *et al.*,

*Defendants.*

Civil Action No. 1:26-cv-00737-RC

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR STAY AND PRELIMINARY AND PERMANENT INJUNCTION**

Lynn Estes Calkins (DC Bar No. 445854)
Zachary P. Lundgren (DC Bar No. 90012330)
800 17th Street, N.W., Suite 1100
Washington, D.C. 20006
Phone: (202) 955-3000
lynn.calkins@hklaw.com
zachary.lundgren@hklaw.com

Andrew Solinger (DC Bar No. 1014742)
511 Union Street, Suite 2700
Nashville, TN 37219
Phone: (615) 850-8062
andrew.solinger@hklaw.com

*Counsel for Plaintiffs*

# TABLE OF CONTENTS


INTRODUCTION .......... 1

ARGUMENT .......... 1

I. This Court Has Jurisdiction Over Plaintiffs' Claims. .......... 1

A. There Is Subject Matter Jurisdiction for Each Claim. .......... 1

1. There Is Jurisdiction over Plaintiffs' Claims that Defendants' Actions Are Ultra Vires and Contrary to Statute. .......... 2

2. There Is Jurisdiction over Plaintiffs' Claims that Defendants Failed to Reasonably Explain the Challenged Actions. .......... 3

3. There Is Jurisdiction over Plaintiffs' Claims that Defendants Failed to Observe Procedural Requirements. .......... 5

B. The Medicare Act Does Not Bar Plaintiffs' Claims. .......... 6

1. The Channeling Requirement Is Inapplicable. .......... 6

2. Section 1395w-4(i)(1)(B) Does Not Preclude Plaintiffs' Challenges to the 2026 MPFS Rule. .......... 9

II. Each Plaintiff Has Standing to Bring This Action. .......... 11

A. The Patient Plaintiffs Have Standing. .......... 11

1. The Patient Plaintiffs Have Article III Standing. .......... 11

2. The Patient Plaintiffs Also Have APA Standing. .......... 14

3. The Patient Plaintiffs Have Standing Under the Medicare Act. .......... 14

B. SkinCure Has Standing To Challenge The Final Rule. .......... 15

1. SkinCure Has Article III Standing. .......... 15

2. SkinCure Also Has APA Standing to Challenge the Final Rule. .......... 17

C. PatientsAct Also Has Standing to Challenge the Final Rule. .......... 18

1. PatientsAct Has Article III Standing. .......... 18

2. PatientsAct Has Standing Under the APA. .......... 20

III. The Elements for a Preliminary Injunction Are All Met Here. .......... 20

A. Plaintiffs Are Likely to Succeed on the Merits. .......... 20

B. Plaintiffs Have Demonstrated Irreparable Injury. .......... 21

C. The Balance of the Equities Favors Plaintiffs, and the Relief Will Not Disserve the Public Interest. .......... 23

IV. The Declaration from Dr. Perez Should Not Be Considered. .......... 23

V. Plaintiffs Should Not Be Required to Post a Bond. .......... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adamski v. McHugh*,
304 F. Supp. 3d 227 (D.D.C. 2015) ....................2

*Adirondack Med. Ctr. v. Sebelius*,
935 F. Supp. 2d 121 (D.D.C. 2013) ....................3

*Adya LLC v. U.S. Drug Enforcement Admin.*,
2026 WL 797339 (D.D.C. Mar. 23, 2026) ....................25

*Aid Ass'n for Lutherans v. U.S. Postal Serf.*,
321 F.3d 1166 (D.C. Cir. 2003) ....................2

*Alcresta Therapeutics, Inc. v. Azar*,
755 F. App'x 1 (D.D.C. 2018) ....................22

*Am. Hosp. Ass'n v. Azar*,
348 F. Supp. 3d 62 (D.D.C. 2018) ....................8

*Am. Hosp. Ass'n v. Azar*,
385 F. Supp. 3d 1 (D.D.C. 2019) ....................9, 10, 11

*Am. Hosp. Ass'n v. Azar*,
964 F.3d 1230 (D.C. Cir. 2020) ....................10

*Am. Hosp. Ass'n v. Becerra*,
596 U.S. 724 (2022) ....................9, 10

*Am. First Legal Found. v. Becerra*,
2024 WL 3741402 (D.D.C. Aug. 9, 2024) ....................24

*Am. Nurses Ass'n v. Leavitt*,
567 F. Supp. 2d 126 (D.D.C. 2008) ....................14

*Amgen, Inc. v. Smith*,
357 F.3d 103 (D.C. Cir. 2004) .................... *passim*

*Animal Legal Def. Fund v. Glickman*,
154 F.3d 426 (D.C. Cir. 1998) ....................13

*Associated Builders & Contractors, Inc. v. Reich*,
922 F. Supp. 676 (D.D.C. 1996) ..........21

*AT&T Info. Sys., Inc. v. Gen. Servs. Admin.*,
810 F.2d 1233 (D.C. Cir. 1987) ..........24

*Banner Health v. Sebelius*,
797 F. Supp. 2d 97 (D.D.C. 2011) ..........15

*Cal. Clinical Lab. Ass'n v. Sec'y of Health & Hum. Servs.*,
104 F. Supp. 3d 66 (D.D.C. 2015) ..........13

*Califano v. Sanders*,
430 U.S. 99 (1977) ..........4

*Carpenters Indus. Cncl v. Zinke*,
854 F.3d 1 (D.C. Cir. 2017) ..........12, 16, 17

*Ciox Health, LLC v. Azar*,
435 F. Supp. 3d 30 (D.D.C. 2020) ..........17

*Clarke v. Sec. Indus. Ass'n*,
479 U.S. 388 (1987) ..........14, 18, 20

*Coe v. McHugh*,
968 F. Supp. 2d 237 (D.D.C. 2013) ..........24

*Council for Opportunity in Educ. v. U.S. Dep't of Educ.*,
2026 WL 120984 (D.D.C. Jan. 16, 2026) ..........25

*Council for Urological Ints. v. Sebelius*,
668 F.3d 704 (D.C. Cir. 2011) ..........4, 7

*Czyzewski v. Jevic Holding Co.*,
580 U.S. 451 (2017) ..........12, 16

*Defs. of Wildlife v. Jewell*,
2014 WL 9883926 (D.D.C. Mar. 20, 2014) ..........24

*Dist. of Columbia v. U.S. Dep't of Agric.*,
444 F. Supp. 3d 1 (D.D.C. 2020) ..........19, 20

*Duggan v. Bowen*,
691 F. Supp. 1487 (D.D.C. 1988) ..........22

*Escobar Molina v. U.S. Dep't of Homeland Sec.*,
811 F. Supp. 3d 1 (D.D.C. 2025) ..........24

*Ethyl Co. v. EPA*,
306 F.3d 1114 (D.C. Cir. 2002) ....................18

*Fed. Educ. Ass'n v. Trump*,
795 F. Supp. 3d 74 (D.D.C. 2025) ....................25

*Fed. Express Corp. v. U.S. Dep't of Com.*,
486 F. Supp. 3d 69 (D.D.C. 2020) ....................2

*Greenwald v. Becerra*,
2022 WL2046108 (D.D.C. June 7, 2022) ....................3

*Griffith v. Fed. Labor Rels. Auth.*,
842 F.2d 487 (D.C. Cir. 1988) ....................2

*Harris Cnty. v. Kennedy*,
786 F. Supp. 3d 194 (D.D.C. 2025) ....................25

*Henry v. Azar*,
518 F. Supp. 3d 520 (D.D.C. 2021) ....................6

*Hood v. Mercer Bucks Orthopaedics*,
2014 WL 5465879 (D.N.J. Oct. 28, 2014) ....................12

*League of Women Voters of U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ....................22, 23

*Leedom v. Kyne*,
358 U.S. 184 (1958) ....................10

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ....................11

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) ....................14

*Luokung Tech. Co. v. Dep't of Def.*,
538 F. Supp. 3d 174 (D.D.C. 2021) ....................22

*Lyng v. Payne*,
476 U.S. 926 (1986) ....................2

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ....................8

*McGregor Printing Cor. v. Kemp*,
1992 WL 118794 (D.D.C. May 14, 1992) ....................22

*Motor & Equipment Mfrs. Ass'n v. Nichols*,
142 F.3d 449 (D.D.C. 1998) ....................18

*Mountain States Legal Found. v. Glickman*,
92 F.3d 1228 (D.C. Cir. 1996) ....................12, 14

*Nat. Res. Def. Council v. EPA* (*"NRDC"*),
464 F.3d 1 (D.C. Cir. 2006) .................... *passim*

*Nat'l Ass'n for Home Care & Hospice, Inc. v. Burwell*,
77 F. Supp. 3d 103 (D.D.C. 2015) ....................9

*Nat'l Cottonseed Prod. Ass'n v. Brock*,
825 F.2d 482 (D.C. Cir. 1987) ....................18

*Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*,
522 U.S. 479 (1998) ....................14

*NB ex rel. Peacock v. Dist. of Columbia*,
682 F.3d 77 (D.C. Cir. 2012) ....................13

*Prolow v. Aetna Life Ins. Co.*,
2021 WL 8566765 (S.D. Fla. Mar. 19, 2021) ....................12

*Rodway v. U.S. Dep't of Agric.*,
514 F.2d 809 (D.C. Cir. 1975) ....................24

*Shalala v. Illinois Council on Long Term Care, Inc.*,
529 U.S. 1 (2000) ....................4, 7

*Stewart v. Azar*,
313 F. Supp. 3d 237 (D.D.C. 2018) ....................13

*Taylor v. Trump*,
2026 WL 396844 (D.D.C. Feb. 11, 2026) ....................25

*Texas Children's Hosp. v. Burwell*,
76 F. Supp. 3d 224 (D.D.C. 2014) ....................20

*Texas v. United States*,
49 F. Supp. 3d 27 (D.D.C. 2014) ....................21

*Truong v. USCIS*,
2022 WL 888192 (D.D.C. Mar. 25, 2022) ....................24

*Urb. Sustainability Dirs. Network v. U.S. Dep't of Agric.*,
2025 WL 2374528 (D.D.C. Aug. 14, 2025) ....................25

**Statutes**

5 U.S.C. § 706(2)(A)..........3, 4

5 U.S.C. § 706(2)(A)–(C)..........5

28 U.S.C. § 1331..........4, 5, 6, 7

42 U.S.C. § 405(g)..........6, 8

42 U.S.C. § 405(h)..........4, 5, 6, 7

42 U.S.C. § 1320b–12..........6

42 U.S.C. § 1395ff(f)(2)(B)..........3

42 U.S.C. § 1395ff(f)(3)..........3, 5, 6, 15

42 U.S.C. § 1395ff(f)(5)..........4, 14

42 U.S.C. § 1395hh(b)(1)..........5

42 U.S.C. § 1395kk-1(a)(4)..........3

42 U.S.C. § 1395w-4..........2, 11, 14, 18

42 U.S.C. § 1395w-4(i)(1)(B)..........9, 10, 11

42 U.S.C., § 1395w-4(c)(1)(A)..........11

42 U.S.C. § 1395y(a)(1)..........5

42 U.S.C. § 1395y(a)(1)(A)..........3

42 U.S.C. § 1395y(a)(1)..........6

**Other Authorities**

42 C.F.R. § 405.906(a)..........7

42 C.F.R. § 405.912(a)..........7

## INTRODUCTION

Although Defendants creatively attempt to rewrite Plaintiffs' Complaint and Motion in order to fit their legal theories and in hopes of having this action dismissed, when each of those arguments is examined, it is plain that Defendants' attempts fail. The Government's procedural and substantive flaws cannot be cured with a post-hoc litigation affidavit outside of the administrative record, and the imaging that is central to the treatment at issue is not merely an "add on" as the Government attempts to now characterize it. This Court has jurisdiction over the claims; Plaintiffs have standing to bring this action; and a stay and/or preliminary injunction is warranted to cease Defendants' illegal steps taken in an attempt to cease coverage for a cancer treatment which many administrative law judges have already recognized to be reasonable and necessary and that Medicare beneficiaries and others have relied on for years.

## ARGUMENT

### I. This Court Has Jurisdiction Over Plaintiffs' Claims.

The bulk of Defendants' Opposition is spent challenging this Court's ability to hear the case in the first instance. Each argument raised by Defendants, however, is based on a misreading of Plaintiffs' Complaint and fails as a result. Defendants' attempt to muddy the waters by conflating which claims are brought by which Plaintiffs against which agency action and then clinging to various Medicare Act provisions to maintain that Plaintiffs' claims are otherwise barred. This Court should not reward this effort, and Plaintiffs here clarify their claims, the jurisdictional bases for each, and how the Medicare Act does not bar suit.

#### A. There Is Subject Matter Jurisdiction for Each Claim.

Plaintiffs' claims can be grouped into three categories—claims that Defendants acted *ultra vires* (Counts One and Two), claims that Defendants improperly changed Agency policy without a reasoned explanation (Counts Three, Four, and Nine), and claims that Defendants circumvented

binding procedural requirements (Counts Five, Six, Seven, and Eight).

**1. *There Is Jurisdiction over Plaintiffs' Claims that Defendants' Actions Are Ultra Vires and Contrary to Statute.***

Count One alleges that the Final Rule is *ultra vires* and in excess of statutory authority. The Entity Plaintiffs (SkinCure and PatientsACT) bring this claim, and the basis for subject matter jurisdiction is the "inherent power of the federal courts 'to reestablish the limits on executive authority' through judicial review." *Adamski v. McHugh*, 304 F. Supp. 3d 227, 237 (D.D.C. 2015) (quoting *Dart v. United States*, 848 F.3d 217, 224 (D.C. Cir. 1988)). Indeed, "the case law in this circuit is clear that judicial review is available when an agency acts *ultra vires*." *Fed. Express Corp. v. U.S. Dep't of Com.*, 486 F. Supp. 3d 69, 79 (D.D.C. 2020) (quoting *Aid Ass'n for Lutherans v. U.S. Postal Serf.*, 321 F.3d 1166, 1173 (D.C. Cir. 2003)).

Plaintiffs' claim is that Congress has limited the type of information the Agency can use to develop the physician fee rule, i.e., the Agency only has authority to issue the Physician Fee Schedule based on certain information and data. *See Lyng v. Payne*, 476 U.S. 926, 937 (1986) ("[A]n agency's power is no greater than that delegated to it by Congress."). Specifically, 42 U.S.C. § 1395w-4 requires the Agency to consider physician information, and the Agency cannot consider hospital outpatient data, which is what the Agency relied on for the Final Rule thereby exceeding the clear statutory limits. This *ultra vires* review applies "[e]ven where Congress is understood generally to have precluded review." *Griffith v. Fed. Labor Rels. Auth.*, 842 F.2d 487, 492 (D.C. Cir. 1988).

Similarly, in Count Two, the Patient Plaintiffs (Bret Allard, Michael Carney, Brenda Crum, Julien DeBacker Jr., Carl Phelps, and L. Peter Smith) claim that the LCDs are *ultra vires* under the same authority. *Aid Ass'n for Lutherans*, 321 F.3d at 1172 ("Judicial review is favored when an agency is charged with acting beyond its authority." (quoting *Dart v. United States*, 848 F.2d

217, 221 (D.C. Cir. 1988))). Congress authorized the Secretary to delegate the responsibility of developing LCDs to the MACs, 42 U.S.C. § 1395kk-1(a)(4), and Congress circumscribed this determination to whether a particular item or service is "reasonable and necessary" for coverage," 42 U.S.C. §§ 1395y(a)(1)(A), 1395ff(f)(2)(B). The Patient Plaintiffs claim that the MACs used unauthorized criteria and heightened evidentiary requirements and therefore exceeded the scope of their delegation, thereby constituting *ultra vires* action. *See Adirondack Med. Ctr. v. Sebelius*, 935 F. Supp. 2d 121, 129 (D.D.C. 2013) ("Agency actions beyond delegated authority are *ultra vires* and should be invalidated." (quotation omitted)).

This Court also has jurisdiction over this claim under 42 U.S.C. § 1395ff(f)(3), as the Patient Plaintiffs are simply challenging the legality of the Final LCDs and the Billing Articles and "there are no material issues of fact in dispute." *Id.* The Final LCDs and Billing Articles are invalid because they impose qualified provider requirements that are both unconstitutionally vague under the Due Process Clause and inconsistent with state law practice requirements against the Tenth Amendment. *See Greenwald v. Becerra*, 2022 WL2046108, at *7 (D.D.C. June 7, 2022) (finding Section 1395ff(f)(3) jurisdiction over claim that LCD conflicted with NCD).

**2. *There Is Jurisdiction over Plaintiffs' Claims that Defendants Failed to Reasonably Explain the Challenged Actions.***

In Count Three, the Entity Plaintiffs allege that the 2026 MPFS Rule is an unexplained change in Agency position in violation of the APA. *See* 5 U.S.C. § 706(2)(A). For years, the Agency reimbursed Image Guided Superficial Radiation Therapy ("IGSRT" or "Treatment") in full yet abruptly departed from this past policy in the 2026 MPFS Rule by reclassifying the Treatment into four new CPT codes and reimbursing ultrasound image guidance as a once-per-course add-on. The Entity Plaintiffs claim that the Agency's justification for this change is patently unreasonable and unsupported in violation of the APA. Thus, the federal question jurisdiction

statute, 28 U.S.C. § 1331, supplies subject matter jurisdiction for this claim. *See Califano v. Sanders*, 430 U.S. 99, 107 (1977) (§ 1331 supplies the jurisdictional basis for APA claims).

Defendants argue that the Medicare channeling provision, 42 U.S.C. § 405(h), bars suits brought under § 1331, but Defendants are mistaken. As stated below, § 405(h) does not bar this claim because invoking that provision would "turn[] what appears to be simply a channeling requirement into *complete* preclusion of judicial review." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 22–23 (2000). The exception applies to the Entity Plaintiffs, and the Entity Plaintiffs "may therefore pursue [their] claim in district court pursuant to section 1331 general jurisdiction." *Council for Urological Ints. v. Sebelius*, 668 F.3d 704, 714 (D.C. Cir. 2011).

In Count Four, the Patient Plaintiffs claim that the Final LCDs and Billing Articles depart from prior Agency policy without a reasoned explanation violating 5 U.S.C. § 706(2)(A). Contrary to existing policy and guidance, the Final LCDs and Billing Articles require RCTs as a prerequisite for Medicare coverage and exclude the Treatment from coverage. The Final LCDs and Billing Articles also impose a new definition of "qualified physician" that precludes dermatologists from delivering the Treatment when the Treatment has been historically delivered almost exclusively by dermatologists. The MACs failed to provide a coherent explanation for these changes and ignored the comments raising these substantive issues. Accordingly, the Final LCDs and Billing Articles are arbitrary and capricious. Because the Patient Plaintiffs are Medicare beneficiaries "in need of the items or services that are the subject of the [LCD]," 42 U.S.C. § 1395ff(f)(5), "there are no material issues of fact in dispute," *id.* § 1395ff(f)(3)(A), and "the only issue of law is . . . that a regulation, determination, or ruling by the Secretary is invalid," *id.* § 1395ff(f)(3)(B).

In Count Nine, the Entity Plaintiffs challenge the MPFS Rule for severely restricting coverage for the Treatment when it is "reasonable and necessary" for the treatment of non-

melanoma skin cancer ("NMSC" or "Cancer"), and the Patient Plaintiffs challenge the Final LCDs and Billing Articles for eliminating coverage for the Treatment when it is "reasonable and necessary." Because the Medicare Act covers items and services that are "reasonable and necessary" for medical treatment, 42 U.S.C. § 1395y(a)(1), and the evidence presented to Defendants during the comment period clearly demonstrated the Treatment's efficacy as a Cancer treatment. Defendants' determination that the Treatment is not "reasonable and necessary" in the Agency's Action is "not in accordance with law" and "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" against the APA, 5 U.S.C. § 706(2)(A)–(C).

As above, 28 U.S.C. § 1331 provides subject matter jurisdiction for the Entity Plaintiffs' challenge because they allege violations of federal law. Section 405(h) does not inhibit § 1331 jurisdiction as the *Illinois Council* exception applies. And, the jurisdictional basis for Patient Plaintiffs' challenge to the Final LCDs and Billing Articles is § 1395ff(f)(3) because the Plaintiff Patients are Medicare beneficiaries raising a legal, not factual, challenge.

### 3. *There Is Jurisdiction over Plaintiffs' Claims that Defendants Failed to Observe Procedural Requirements.*

In Count Five, the Patient Plaintiffs claim that the Final LCDs and Billing Articles establish a new substantive legal standard governing Medicare coverage and payment for the Treatment and therefore required formal notice and comment rulemaking under 42 U.S.C. § 1395hh(b)(1). This Court has subject matter jurisdiction over this claim pursuant to § 1395ff(f)(3) because the Patient Plaintiffs are Medicare beneficiaries raising purely legal challenges to these determinations.

Likewise, in Count Six, the Patient Plaintiffs claim in the alternative that the Final LCDs and Billing Articles operate as a de facto NCD without following the required procedures for promulgating and NCD. Because this, too, is a challenge to the legal validity of the Final LCDs, this Court has subject matter jurisdiction over this claim pursuant to § 1395ff(f)(3).

In Count Seven, the Patient Plaintiffs further challenge the Final LCDs and Billing Articles as de facto NCDs issued without following the required CED framework pursuant to 42 U.S.C. § 1395y(a)(1) and § 1320b–12. This Court has subject matter jurisdiction over this claim pursuant to § 1395ff(f)(3) because the Patient Plaintiffs are Medicare beneficiaries raising purely legal challenges to the Final LCDs and Billing Articles.

Finally, in Count Eight, the Patient Plaintiffs also challenge the Final LCDs and Billing Articles for extending the 2026 MPFS Rule through the Final LCDs and Billing Articles in an arbitrary and capricious manner. This Court also has subject matter jurisdiction over this claim pursuant to § 1395ff(f)(3) because the Patient Plaintiffs are Medicare beneficiaries raising purely legal challenges to the Final LCDs and Billing Articles.

### B. The Medicare Act Does Not Bar Plaintiffs' Claims.

#### 1. *The Channeling Requirement Is Inapplicable.*

Defendants argue that there is no jurisdiction for Plaintiffs' claims under the Medicare Act because they have not presented their claims to the Secretary, nor exhausted their administrative remedies, and thus have not met the Medicare Act's channeling provision, 42 U.S.C. § 405(g). Claiming that § 405(g) covers Plaintiffs' claims, Defendants then contend that § 405(h) precludes Plaintiffs from invoking § 1331 jurisdiction.

The Medicare Act's channeling requirement, however, does not foreclose the Entity Plaintiffs' claims because the *Illinois Council* exception applies, and they "may therefore pursue [their] claims in district court pursuant to section 1331 general federal question jurisdiction." *Council for Urological Ints.*, 668 F.3d at 714. Further, the Medicare Act does not bar the Patient Plaintiffs' claims because the jurisdictional basis for their claims is § 1395ff(f)(3), which excuses compliance with the Medicare channeling requirement. *See Henry v. Azar*, 518 F. Supp. 3d 520, 527 (D.D.C. 2021) (§ 1395ff(f)(3) is an exception to channeling and exhaustion requirements).

"[T]he Supreme Court has . . . held that section 405(h)'s 'channeling requirement' is not absolute," *Council for Urological Ints.*, 668 F.3d at 707, and does not apply to claims "where its application . . . would not lead to a channeling of review through the agency, but would mean no review at all," *Ill. Council*, 529 U.S. at 17. The "*Illinois Council* inquiry is a practical one," and "[t]he exception applies 'not only when administrative regulations foreclose judicial review, but also when roadblocks practically cut off any avenue to federal court.'" *Council for Urological Ints*, 668 F.3d at 712 (quoting *Am. Chiropractic Ass'n v. Leavitt*, 431 F.3d 812, 816 (D.C. Cir. 2005)).

The Entity Plaintiffs are neither providers nor Medicare beneficiaries and thus have no access to the Medicare Act's administrative review channels. 42 C.F.R. §§ 405.906(a), 405.912(a). Because the Entity Plaintiffs are unable to "channel" their claims through the Agency, applying § 405(h) "would mean no review at all," and the channeling requirement therefore does not apply to the Entity Plaintiffs' claims under *Illinois Council*. *Ill. Council*, 529 U.S. at 22–23; *see Council for Urological Ints*, 668 F.3d at 708 (applying *Illinois Council* exception to plaintiffs with "no way to obtain review through Medicare Act channels"). Because the channeling requirement does not apply to the Entity Plaintiffs' claims, the jurisdiction-stripping language of § 405(h) falls aside and they "may therefore pursue [their] claim[s] in district court pursuant to section 1331 general federal question jurisdiction." *Council for Urological Ints.*, 668 F.3d at 714.

Defendants admit that the Entity Plaintiffs cannot channel their claims through the Agency yet maintain that their claims are nonetheless barred because they "can work with proxies to raise claims on their behalf." Opp., 20. This exception is limited. *Council for Urological Ints.*, 668 F.3d at 713–14. Defendants broadly argue that the Entity Plaintiffs' interests are aligned with potential proxies because some beneficiaries and providers may benefit from the outcome of this litigation, but Defendants overstate the test and overlook the nuanced interests at stake. The D.C. Circuit has

explained that there must be circumstances that "ensure an alignment of interests" between a plaintiff and a potential proxy, and courts consider "factors that speak to a potential proxy's *willingness and ability* to pursue the plaintiff's claim." *Id.* at 712–14 (emphasis added). This reflects the "fundamentally . . . practical" *Illinois Council* inquiry, and when "the only entities able to invoke Medicare Act review are highly unlikely to do so, their unwillingness to pursue a Medicare Act claim poses a serious 'practical roadblock' to judicial review." *Id.* at 712.

Here, there are no proxies with aligned interests likely to present the Entity Plaintiffs' claims to the Agency. Although a provider or Medicare beneficiary could ostensibly seek a coverage determination for the Treatment and raise similar arguments advanced here against the 2026 MPFS Rule, they are "highly unlikely to do so." *Id.* Providers and Medicare beneficiaries would take on enormous risk by administering and receiving the Treatment just to tee up a coverage determination claim. Moreover, given that the Treatment treats Cancer, Medicare beneficiaries who are already fighting for their lives are highly unlikely to litigate this case fully and would likely concede if they could themselves obtain reimbursement for the Treatment. Under the "fundamentally . . . practical" inquiry, the "only entities able to invoke Medicare Act review are highly unlikely to do so" so to deny jurisdiction to the Entity Plaintiffs because of these ostensible proxies would "pose[] a 'serious roadblock' to judicial review." *Id.*[1]

[1] Because the *Illinois Council* exception applies to the Entity Plaintiffs, the Medicare Act's channeling requirement and its two sub-requirements—presentment and exhaustion—do not apply here. *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976). Defendants separately argue that this Court should not excuse the exhaustion requirement and Plaintiffs failed to exhaust administrative remedies. ECF No. 17 at 21–22. This argument has no force because exhaustion is a sub-requirement of channeling, and the application of *Illinois Council* necessarily renders the exhaustion requirement inapplicable. That being said, Plaintiffs note that, in arguing that the exhaustion requirement should not be waived, Defendants omit a key waiver ground—that a "court may waive the exhaustion requirements of § 405(g) when . . . (3) exhaustion would be futile." *Am. Hosp. Ass'n v. Azar*, 348 F. Supp. 3d 62, 75 (D.D.C. 2018). Courts have deemed exhaustion futile when the Agency has rejected the same claim raised during the comment period thus giving no

### 2. *Section 1395w-4(i)(1)(B) Does Not Preclude Plaintiffs' Challenges to the 2026 MPFS Rule.*

Defendants also argue that 42 U.S.C. § 1395w-4(i)(1)(B) precludes the Entity Plaintiffs' challenges to the 2026 MPFS Rule because these claims attack a determination of relative values. Opp., at 33–36. This argument is wrong and overlooks the "'strong presumption' in favor of judicial review of final agency action." *Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 733 (2022) (quoting *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018)). That presumption, again, "can only be overcome by [] 'clear and convincing evidence' that Congress intended to preclude the suit," and Defendants do not answer the call here. *Amgen, Inc. v. Smith*, 357 F.3d 103, 111 (D.C. Cir. 2004) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967)).

These claims are not directed to the "determination of relative values and relative value units" themselves. 42 U.S.C. § 1395w-4(i)(1)(B). Rather, Plaintiffs' claims challenge the source of the Agency's underlying data and the Agency's unlawful exclusion of the Treatment from coverage. Defendants dismiss Plaintiffs' position as a "hair-splitting interpretation" of § 1395w-4(i) and grasp at out-of-Circuit precedent in support. ECF No. 17 at 33–34. But *this very Court* has authorized a challenge to the Secretary's reimbursement rate adjustment despite a statute precluding judicial review of rate adjustments specifically because the Secretary based the adjustment on cost data "contained in a Medicare subsection on which the Secretary could not rely." *Am. Hosp. Ass'n v. Azar*, 385 F. Supp. 3d 1, 9 (D.D.C. 2019), *rev'd*, 967 F.3d 818 (D.C. Cir. 2020), *rev'd and remanded sub nom. Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724 (2022). The *Supreme Court* then upheld this Court and "conclude[d] that the statute does not preclude judicial

---

indication "that administrative appeals might result in the agency overturning its regulation." *Nat'l Ass'n for Home Care & Hospice, Inc. v. Burwell*, 77 F. Supp. 3d 103, 112 (D.D.C. 2015). Exhaustion would likewise be futile here because Defendants have uniformly rejected Plaintiffs' claims advanced here when previously raised during the comment period.

review of HHS's reimbursement rates." *Am. Hosp. Ass'n*, 596 U.S. at 733.

Section 1395w-4(i)(1)(B) also does not preclude Plaintiffs' claims because they challenge the 2026 MPFS Rule on *ultra vires* grounds. Defendants cast Plaintiffs' argument as one under *Leedom v. Kyne*, 358 U.S. 184 (1958), but Defendants are misguided. Opp., 34–36. Yes, Plaintiffs raised a *Kyne* argument, but only as the *third* argument against § 1395w-4(i)(1)(B) preclusion.[2] Motion, 18–19. Defendants completely disregard Plaintiffs' second argument, derived from *Amgen, Inc. v. Smith*, 357 F.3d 103 (D.C. Cir. 2004), that, even when Congress expressly precludes judicial review of certain agency action, the preclusion "extends no further than the Secretary's statutory authority" to engage in that activity. *Id.* at 113; Motion, 17–18. If a claim asserts an agency lacked authority to engage in the activity, "the determination of whether the court has jurisdiction is intertwined with the question of whether the agency has authority for the challenged action, and the court must address the merits to the extent necessary to determine whether the challenged agency action falls within the scope of the preclusion on judicial review." *Amgen*, 357 F.3d at 113. "'[T]he jurisdiction-stripping provision does not apply' if the agency's action fails to qualify as the kind of action for which review is barred." *Am. Hosp. Ass'n v. Azar*, 964 F.3d 1230, 1238 (D.C. Cir. 2020) (quoting *Sw. Airlines Co. v. TSA*, 554 F.3d 1065, 1071 (D.C. Cir. 2009)).

Defendants completely ignore this argument, which is distinct from a *Kyne* argument. *Am. Hosp. Ass'n*, 964 F.3d at 1239 (noting "distinction between cases involving a '*Kyne* exception' and cases such as this one in which 'the relevant statutory bar . . . [is] effectively coextensive with the merits" (quoting *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 509–10 (D.C. Cir. 2015))). Defendants' familiarity with this argument is irrelevant because *this Court* has considerable experience applying this doctrine. *See, e.g.*, *Am. Hosp. Ass'n*, 385 F. Supp. 3d 1 at 10 n.13

---

[2] This Court also has jurisdiction under *Kyne* for the reasons raised in the Motion at 18–19.

(explaining, if "Secretary's action is so extreme that it ceases to be an 'adjustment,' a court may review and strike down that action"). And, in that case, although the statute precluded review of "adjustments," this Court held "because the Secretary exceeded his statutory authority to make an 'adjustment,'" the statute did "not preclude the Court from reviewing that action." *Id.* Similarly, here, Plaintiffs allege that Congress only permits the Agency to base MPFS RVUs on physician work, 42 U.S.C., § 1395w-4(c)(1)(A), practice expense, *id.* § 1395w-4(c)(2)(C), and malpractice, *id.* § 1395w-4(c)(3). In the 2026 MPFS Rule, however, the Agency based the MPFS RVUs for the Treatment on *hospital outpatient* data, which is not permitted by § 1395w-4 and is addressed by a different statute for OPPS reimbursement rates, § 1395*l*. By relying on this unauthorized data, the Agency exceeded its authority and issued an unlawful "determination of relative values and relative value units." 42 U.S.C. § 1395w-4(i)(1)(B). Accordingly, this action is not precluded because "the determination of whether the court has jurisdiction is intertwined with the question of whether the agency has authority for the challenged action." *Amgen*, 357 F.3d at 113.

## II. Each Plaintiff Has Standing to Bring This Action.

Having found jurisdiction, the Court must determine whether these Plaintiffs have standing. The Government says they do not, and it is wrong.

### A. The Patient Plaintiffs Have Standing.

#### 1. *The Patient Plaintiffs Have Article III Standing.*

To establish Article III standing, one must show injury in fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

##### a. The Patient Plaintiffs Have Incurred Injury in Fact.

Two Patient Plaintiffs are in ongoing treatment, currently need the Treatment, are incurring out-of-pocket costs, and cannot continue with the Treatment absent the requested relief. Motion, Exs. D, G. The fact that one is already paying more because of lost Medicare coverage suffices

for Article III standing; even small economic loss is a cognizable injury in fact. *Czyzewski v. Jevic Holding Co.*, 580 U.S. 451, 464 (2017); *Carpenters Indus. Cncl v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017). The Government's assertion that they "could" seek alternative treatment does not negate the concrete injury they are experiencing for the Treatment they have declared that they need.

The remaining four Patient Plaintiffs also satisfy Article III. *See* Motion, Exs. E, F, H, I. All six are Medicare beneficiaries with multi-year histories of recurrent skin cancer, have previously received the Treatment, and now face substantially increased risk of recurrence, denial of claims, and loss of access to care. The challenged restrictions materially increase each of the six Patient Plaintiff's risk of serious harm. Each has stated they are likely to require the Treatment again, and future treatment is expected, not hypothetical. Courts find standing where plaintiffs face a significant likelihood of disease recurrence or future medical need. *See Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1234–35 (D.C. Cir. 1996) (when the potential harm is severe, even modest increments in risk suffice); *Nat. Res. Def. Council v. EPA* (*"NRDC"*), 464 F.3d 1, 6–7 (D.C. Cir. 2006) (finding a few people at risk for cancer was sufficient).

The six Patient Plaintiffs suffer from recurrent skin cancer; eliminating or reducing coverage for the Treatment substantially heightens the risk that future cancers will be untreated or undertreated, increasing the likelihood of progression and more invasive interventions. Courts recognize that actions impeding access to future medical care, where the need is substantially likely, constitute concrete injury. *See Prolow v. Aetna Life Ins. Co.*, 2021 WL 8566765, at *7 (S.D. Fla. Mar. 19, 2021) (30% chance of cancer recurrence established "substantial likelihood of future harm"); *Hood v. Mercer Bucks Orthopaedics*, 2014 WL 5465879, at *5 (D.N.J. Oct. 28, 2014) (recent treatment for recurrent conditions supported inference of future need).

The Government's contrary position would require the Court to disregard sworn

declarations of recurrent cancer and likely future need. *Cf.* Opp., 22–25. At this stage, the Court is to assume Plaintiffs will prevail on the merits, *Stewart v. Azar*, 313 F. Supp. 3d 237, 250 (D.D.C. 2018), and, if even one plaintiff has standing, the case proceeds. *Animal Legal Def. Fund v. Glickman*, 154 F.3d 426, 429 (D.C. Cir. 1998). The continued coverage of other treatments does not defeat standing; Plaintiffs have declared that they need IGSRT and challenge its elimination as a covered treatment. The availability of SRT without imaging or Mohs surgery does not erase the concrete injury from losing IGSRT coverage.

Nor can the Government avoid standing by suggesting Plaintiffs may self-pay. Threats to an individual's ability to obtain coverage, *NB ex rel. Peacock v. Dist. of Columbia*, 682 F.3d 77 (D.C. Cir. 2012), and financial loss, *Stewart I*, 313 F. Supp. 3d at 251, are concrete injuries. And, Article III does not require a previously denied claim. *Cal. Clinical Lab. Ass'n v. Sec'y of Health & Hum. Servs.*, 104 F. Supp. 3d 66 (D.D.C. 2015), is distinguishable.[3] The plaintiff there alleged only a procedural injury; the no-injury-in-fact finding was based on facts absent here: plaintiff retained access to the test results, incurred no charge, and faced no likelihood of future testing or denia*l. Id.* at 76. Here, the Agency's Action eliminates Medicare coverage for the Treatment.

**b. Patient Plaintiffs Have Shown Causation and Redressability.**

The Patient Plaintiffs' injuries are traceable to the Agency's Action which eliminates Medicare coverage for the Treatment, increasing costs and denying access to Medicare beneficiaries. They will either suffer financial harm, forgo Treatment, or lose access to care; a causal chain more direct than what this Circuit requires. *See NRDC*, 464 F.3d 1, 7. As in *Prolow*, *Hood*, and *Stewart I*, where similar coverage restrictions and increased medical risks satisfied

[3] The Government's cite to *Carney v. Adams* is inapposite. Adams asserted only a generalized, unsupported intent to apply for a judgeship. 592 U.S. 53 , 63-65 (2020). Here, two Plaintiffs have present, ongoing injuries; the others have documented, multi-year histories of recurrent cancer requiring the Treatment. This case is not about the abstract.

Article III, injunctive relief will restore coverage, redressing these injuries,

### 2. ***The Patient Plaintiffs Also Have APA Standing.***

APA standing is met where the plaintiff's injury is "arguably within the zone of interests" protected by the statute at issue. [4] *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 488 (1998); *Lujan*, 497 U.S. at 883. The test is not demanding and is met where a plaintiff is the subject of the challenged action or has interests not marginally related to the statute's purpose. *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399–400 (1987). Where multiple plaintiffs assert the same claims, standing need only be established for one. *Mountain States Legal Found.*, 92 F.3d at 1232.

The Patient Plaintiffs are the direct subjects of the Agency's Action. Each is a Medicare Part B beneficiary with cancer, medically unsuitable for surgery, and in need of a non-invasive treatment option. As beneficiaries "in need of the items or services that are the subject of the coverage determination," they fall within 42 U.S.C. § 1395ff(f)(5) and are directly affected by § 1395w-4 reimbursement rates. They face increased costs and loss of access to medically necessary cancer care; their interest in continued Treatment coverage is the very interest protected by the statute. Indeed, Medicare beneficiaries whose health and coverage depend on the challenged agency action fall squarely within the zone of interests. *See Am. Nurses Ass'n v. Leavitt*, 567 F. Supp. 2d 126, 134 (D.D.C. 2008); *Amgen*, 357 F.3d at 109.

### 3. ***The Patient Plaintiffs Have Standing Under the Medicare Act.***

Section 1395ff(f)(5) permits review by Medicare beneficiaries "in need" of the items or services subject to a local coverage determination—a requirement satisfied here because two Plaintiffs currently need the Treatment and the remaining Plaintiffs face a substantial likelihood

[4] The Government does not challenge Plaintiffs' APA standing. Because the Court has an independent duty to assess standing, Plaintiffs briefly address APA standing here.

of needing it in the imminent future. Section 1395ff(f)(3) further authorizes direct judicial review without administrative exhaustion where, as here, the challenge presents purely legal questions concerning the validity of the Agency Action, rather than individualized benefit determinations.

The Government's argument that Plaintiffs lack standing because they are not "in need" of the Treatment fails. Opp., 23-25. The Treatment is Image-Guided Superficial Radiation Therapy, and the Plaintiffs have sworn under oath that that is the treatment they need. *See* Motion, Exs. D-I. Multiple ALJs have previously recognized Image-Guided Superficial Radiation Therapy as being a reasonable and necessary treatment. Complaint, ¶ 76-77. For standing purposes, there is simply no basis to accept the Government's convoluted new theory that "imaging" does not cure cancer, and, as stated above, Plaintiffs have adequately demonstrated their situations are sufficient to demonstrate the need. This situation is not like that presented in *Cal. Clinical Lab. Ass'n v. Sec'y of Health & Hum. Servs,* where no concrete injury was pled, and the standing requirement has been met.

**B. SkinCure Has Standing To Challenge The Final Rule.**

**1. *SkinCure Has Article III Standing.***

As the declarations from Mr. Brandt and Mr. Baker make clear, SkinCure's business model depends on partnering with dermatology practices to deliver the Treatment to patients. Motion Exs. B, J. The Final Rule drastically reduces Medicare coverage for the very service SkinCure enables thereby striking at the heart of SkinCure's operations. As a result, SkinCure has suffered, and continues to suffer, concrete and particularized injury as a direct result of the Final Rule.

Where, as here, the plaintiff is the direct "object of the action … at issue," its standing is "self-evident." *Banner Health v. Sebelius*, 797 F. Supp. 2d 97, 108 (D.D.C. 2011) (quoting *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002)). As in *Banner*, where organizations that owned and operated hospitals were held to be the object of the Agency's actions regarding Medicare's

outlier payment system, SkinCure, a facilitator of the Treatment, is an object of the Agency's Final Rule drastically decreasing Medicare reimbursement for the Treatment.

The harm SkinCure has experienced is not speculative or abstract. As was declared to by two witnesses, the Final Rule has already inflicted concrete, demonstrable injury on SkinCure's operations: SkinCure has been forced to terminate sixty employees as a direct result of the Final Rule, has lost revenue, has seen partnerships disrupted, and has been compelled to restructure its operations. Motion Exs. B ¶¶ 36, 37; J ¶¶ 17-18. These harms will persist and intensify so long as the Final Rule remains in effect. Economic loss of this nature is a classic injury in fact, and the precise dollar amount need not be pleaded to establish standing. *See Czyzewski*, 580 U.S. at 464. SkinCure need not demonstrate precise quantified damages; even minimal economic harm satisfies Article III. *See Carpenters Indus. Cncl*, 854 F.3d at 5.

The Government's attempt to pigeonhole SkinCure's economic harm as merely "lost profits" grossly mischaracterizes its injury. Opp., 40-41. SkinCure's challenge is not simply about lost profits; it is about the drastic reduction in reimbursement for the Treatment that SkinCure's entire business model is built to deliver. The Final Rule predictably reduces use, strands substantial fixed investments, and destabilizes SkinCure's operations. Motion Ex. J ¶¶ 4, 17. And, the Government admits that when economic harm threatens a movant's business it constitutes an economic harm sufficient to establish standing. Opp., 41. SkinCure has demonstrated current and continuing economic and business harm that threatens its business, as the reimbursement reduction will operate continuously against SkinCure's business unless the Court grants relief. SkinCure faces an "actual and imminent" threat of continued and future injury, not merely a conjectural or hypothetical one. *NRDC*, 464 F.3d at 6.

SkinCure's injury is caused by the Final Rule. SkinCure is the nation's leading provider

of management and administrative services supporting dermatology practices that deliver the Treatment, operating through a network of more than 434 dermatology practices and 900 clinicians. Its business model depends entirely on community dermatology practices' ability to deliver and be reimbursed for the Treatment. *See* Motion, Ex. J ¶ 4. The causal chain is immediate and non-attenuated. The Government categorically reduced Medicare coverage for the Treatment; dermatology practices' ability to bill for the Treatment is drastically reduced; and SkinCure consequently has lost revenue, partnerships, and operational capacity, and is compelled to conduct layoffs and restructuring. The layoffs and operational impairment flow directly from the Agency Action itself. This causal chain is far shorter and more direct than the one the D.C. Circuit accepted in *NRDC*. 464 F.3d at 7. Here, the injury flows directly from the coverage reduction itself.

Even if one were to assume that SkinCure's injury flows through the conduct of its dermatology practice partners, there is "little doubt as to causation." *Ciox Health, LLC v. Azar*, 435 F. Supp. 3d 30, 49 (D.D.C. 2020) (internal quotation omitted). The Final Rule all but ensures that SkinCure's dermatology practice partners will cease offering and/or cease to be reimbursed for offering the Treatment—making it economically infeasible for dermatology practices to continue offering the Treatment given that they rely on SkinCure to facilitate its offering and SkinCure has substantial fixed costs in equipment, shielded suites, training staff, and regulatory compliance that it cannot maintain without Medicare reimbursement.

SkinCure's injury is redressable by a favorable ruling as "[c]ausation and redressability typically 'overlap as two sides of a causation coin.'" *Carpenters Indus. Council*, 854 F.3d at 6 n.1 (D.C. Cir. 2017); *see also Ciox*, 435 F. Supp. 3d at 52; *Am. Nurses Ass'n*, 593 F. Supp. 2d at 133.

**2. *SkinCure Also Has APA Standing to Challenge the Final Rule.***

The Government argues that SkinCure lacks APA standing by contending that "SkinCure and its employees are not the intended beneficiaries of the Medicare program and it is not

Medicare's purpose to guarantee SkinCure's profits or employment for its staff." Opp., 41. The Supreme Court, however, has already rejected this argument, holding instead that "there need be no indication of congressional purpose to benefit the would-be patient," *Clarke*, 479 U.S. at 399-400, and that whether a "plaintiff's objectives are the same as those intended by congress" is "beside the point." *Amgen*, 357 F.3d at 110.

The record here is plain that SkinCure's interests are congruent with the Medicare Act's purpose and specifically the MPFS provisions governing physician payment. 42 U.S.C. § 1395w-4. *See* ECF 11, Ex. 4 ¶¶ 26, 36, 37. Congress enacted § 1395w-4 to establish a resource-based payment system for physician services, and SkinCure's interest in adequate reimbursement serves this statutory purpose. If the Treatment is not reimbursed, many providers will cease to offer it, representing an existential threat to SkinCure's business. *See Amgen*, 357 F.3d at 109–10 (finding manufacturer's commercial interest was "congruent with the interests of beneficiaries.").

SkinCure is uniquely positioned to police the interests the Medicare Act protects. *See e.g.*, *Amgen*, 357 F.3d at 110; *Ethyl Co. v. EPA*, 306 F.3d 1114, 1148 (D.C. Cir. 2002); *Motor & Equipment Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 458 (D.D.C. 1998); *Nat'l Cottonseed Prod. Ass'n v. Brock*, 825 F.2d 482, 492 (D.C. Cir. 1987). SkinCure provides the equipment, facilities, staff, and regulatory compliance infrastructure that enables these practices to offer the Treatment. As such, its interest in Medicare reimbursement for the Treatment is congruent with the statute.

**C. PatientsAct Also Has Standing to Challenge the Final Rule.**

**1. *PatientsAct Has Article III Standing.***

To demonstrate injury in fact an organization must show that: (1) the challenged activity "perceptibly impairs the organization's ability to provide services," in direct conflict with the organization's mission; and (2) the organization "uses its resources to counteract that harm." *Whitman-Walker Clinic*, 485 F. Supp. 3d 1, 19 (D.D.C. 2020).

First, PatientsAct's core mission is to advocate for patient access to medically necessary care, including Medicare patients who require the Treatment. The Final Rule's drastic reduction in Medicare reimbursement directly conflicts with that mission by predictably limiting patient access to the Treatment. PatientsAct's Medicare patient constituents face an imminent risk of coverage denials and loss of access to the Treatment. The Court in *NRDC* found standing where statistical evidence showed that only two to four of the organization's nearly half a million members would develop nonfatal skin cancer—a probability of roughly 1 in 200,000. 464 F.3d 1, 6–7 (D.C. Cir. 2006). The likelihood of harm here far exceeds that threshold: the reimbursement reduction will predictably cause providers to stop offering the Treatment or deny coverage, frustrating PatientsAct's ability to advocate for patient access and perform its fundamental programmatic services, impairing its day-to-day operations. *See Havens Realty Co. v. Coleman*, 455 U.S. 363, 379 (1982) (finding injury where ability to provide services was impaired).

The reduction in reimbursement will cause Medicare patients who need the Treatment to turn to PatientsAct for assistance, increasing demand on PatientsAct's resources, including staff time, funds, and advocacy efforts, and "forcing it to divert resources" away from other programs. *Dist. of Columbia v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 45 (D.D.C. 2020). PatientsAct has been actively lobbying against the Final Rule and will continue to expend resources fighting the reduction in the Treatment's reimbursement. PatientsAct will use its resources "to counteract" the harm caused by the Final Rule, "spending more money and exerting more manpower at a time when resources are already stretched thin." *Whitman-Walker*, 485 F. Supp. 3d at 19, 22. These resource expenditures are necessitated by the direct frustration of PatientsAct's mission.

Further, PatientsAct's injuries are fairly traceable to the Final Rule. But for the Agency's reduction in Medicare reimbursement for the Treatment, PatientsAct would not need to divert

resources to advocacy or assist patients facing coverage denials. The causal chain is clear. And, a favorable court decision would redress PatientsAct's injuries. Restoring reimbursement for the Treatment would eliminate the need for PatientsAct to expend resources combating coverage denials and would restore patient access to the Treatment.

### 2. *PatientsAct Has Standing Under the APA.*

PatientsAct likewise satisfies the zone of interest test. PatientsAct is a national patient advocacy organization whose mission is to ensure patient access to needed care. Congress enacted the MPFS to ensure appropriate reimbursement for physician services furnished to Medicare beneficiaries. PatientsAct's advocacy for beneficiary access to the Treatment aligns directly with that statutory purpose. The Government's attempt to dismiss PatientsAct as "merely an advocacy organization" only underscores its standing. Congress need not have intended to benefit the plaintiff itself, *Clarke*, 479 U.S. at 399–400, and PatientsAct is precisely the type of organization that can be expected to "police the interests that the statute protects." *Amgen*, 357 F.3d at 110.

## III. The Elements for a Preliminary Injunction Are All Met Here.

In assessing whether a plaintiff is entitled to a preliminary injunction, this Court is to balance all four of the elements on a "sliding scale" such that if 'the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor.'" *Tex. Children's Hosp. v. Burwell*, 76 F. Supp. 3d 224, 235 (D.D.C. 2014) (quoting *Davis v. Pension Benefit Guar. Co.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009)); *see also District of Columbia*, 444 F. Supp. 3d at 15.

### A. Plaintiffs Are Likely to Succeed on the Merits.

Defendants primarily argue that Plaintiffs are unlikely to succeed on the merits because this Court lacks jurisdiction, Opp., 17–28, 33–36, but this Court has jurisdiction over all of Plaintiffs' claims and there are no statutes precluding review here. Therefore, the bulk of

Defendants' arguments on the likelihood of success fail at the outset because this Court has jurisdiction over Plaintiffs' claims. Jurisdictional arguments aside, Defendants do not contest Plaintiffs' challenges to the 2026 MPFS Rule or Billing Articles, and this Court should treat these arguments as conceded. *See Texas v. United States*, 49 F. Supp. 3d 27, 39 (D.D.C. 2014) ("[I]t is well-established that courts may deem the unaddressed arguments as conceded."). Plaintiffs incorporate the arguments from the Motion articulating likelihood of success, Motion at 19–43, and maintain that they are likely to succeed on the merits of their claims.

Defendants only raise one merits-based argument, arguing that Plaintiffs are unlikely to succeed on their challenges to the Final LCDs. Opp., 29–32. Defendants state that Plaintiffs' LCD claims are unlikely to succeed because LCDs are not regulations by the Secretary, LCDs are not subject to § 1395hh(a)'s notice-and-comment requirements, and LCDs do not establish or change a "substantive legal standard." Opp., 29–32. Defendants miss the forest through the trees. The essence of Plaintiffs' challenge to the Final LCDs is that the LCDs are LCDs in name only and, together with the implementing Billing Articles, constitute a *de facto* national coverage determination. *Associated Builders & Contractors, Inc. v. Reich*, 922 F. Supp. 676, 680 (D.D.C. 1996) ("The label that the agency puts on its given exercise of administrative power is not conclusive; rather it is what the agency does in fact."). Defendants' *a priori* arguments about LCDs fail to acknowledge the process that generated the particular Final LCDs challenged here. A full review of the Final LCDs' issuance and surrounding circumstances reveals that the Final LCDs circumvented the proper procedures are *ultra vires*. Defendants' lone merit-based argument falls flat; Plaintiffs are likely to succeed on the merits of their claims challenging the Final LCDs.

**B. Plaintiffs Have Demonstrated Irreparable Injury.**

As noted above in the context of standing, each Plaintiff is incurring serious irreparable

injuries as a result of the Agency's Action.

The Patient Plaintiffs are incurring the loss of the Treatment they need to cure their Cancer. *See Alcresta Therapeutics, Inc. v. Azar*, 755 F. App'x 1, 5 (D.D.C. 2018) (was irreparable harm where a Medicare coding decision bundled the product in a manner that prevented patient plaintiffs from obtaining insurance reimbursement and caused the manufacturer plaintiff significant financial harm); *Duggan v. Bowen*, 691 F. Supp. 1487, 1498-99 (D.D.C. 1988) (was irreparable injury caused by the agency's policy of not reimbursing part-time daily home care, forcing Medicare beneficiaries to forgo care or transition to inpatient settings).

The Entity Plaintiffs are incurring substantial threats to their business and organizational interests. *See Wis. Gas. Co.*, 758 F.2d T 674 (even recoverable loss may constitute irreparable harm where it threatens the very existence of the movant's business); *Luokung Tech. Co. v. Dep't of Def.*, 538 F. Supp. 3d 174, 192-93 (D.D.C. 2021) (was irreparable harm where plaintiff suffered "unrecoverable monetary loss, including diminished access to capital, canceled contracts, loss of market share, and difficulty recruiting and retaining talent."); *McGregor Printing Co. v. Kemp*, 1992 WL 118794, at *5 (D.D.C. May 14, 1992) ("the irretrievable monetary loss to [plaintiff] in combination with the loss in employment to [plaintiff's] employees" amounted to irreparable harm); *League of Women Voters*, 838 F.3d at 9 ("[O]bstacles" that "unquestionably make it more difficult for [an organization] to accomplish [its] primary mission ... provide injury for purposes both of standing and irreparable harm.").

Despite the clarity of the irreparable injury here, Defendants argue that Plaintiffs face no irreparable harm "because safe and effective treatments for skin cancer remain covered and available." Opp., 37–39. The available "safe and effective treatment" that Defendants point to is surface radiation therapy, which is fundamentally distinct from the Treatment. IGSRT is a distinct,

image-guided modality with published protocols, multi-year outcomes exceeding 99%, and direct comparative data. And, as the Motion explains, the Agency's Action at issue functionally eliminates access to IGSRT—the image-guided modality selected for the Patient Plaintiffs and supported by SkinCure and PatientsACT as a medically appropriate, office-based treatment option for Medicare beneficiaries with NMSC. Motion at 3–4, 43–44. Because the Patient Plaintiffs and PatientsAct's Medicare constituents will lose access to this critical, discrete treatment and because SkinCure will suffer existential economic losses that threatens bankruptcy and hundreds of employee terminations, they will suffer irreparable harm and nothing Defendants have argued is sufficient to alter that finding. *See also* Section IV regarding the Improper Declaration.

### C. The Balance of the Equities Favors Plaintiffs, and the Relief Will Not Disserve the Public Interest.

Although the Government contends that these two factors "tilt decisively" in their favor, Opp., 43, again, the Government is wrong. The Government stands to save money; the relief requested will allow Medicare beneficiaries to continue with their much needed cancer Treatment and will allow SkinCure to continue to provide valuable services to help in that process. An assessment of these two factors clearly weigh in factor of granting the relief requested while the matter is fully litigated so lives are saved and the business is permitted to continue. And, in contrast, there is no public interest in 'the perpetuation of unlawful agency action.'" *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

## IV. The Declaration from Dr. Perez Should Not Be Considered.

In an attempt to create factual issues where there are none and to defeat a finding of likelihood of success on the merits, the Government improperly filed a litigation affidavit.

It is "black-letter administrative law that in an APA case, a reviewing court should have

before it neither more nor less information than did the agency when it made its decision."[5] *Truong v. USCIS*, 2022 WL 888192, at *2 (D.D.C. Mar. 25, 2022) (internal citation omitted). "[T]he agency's role is to resolve factual issues to arrive at a decision that is supported by the administrative record, while the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Coe v. McHugh*, 968 F. Supp. 2d 237, 239 (D.D.C. 2013). The only way to do that is to assess the complete record before the Agency at the time—not through post-hoc affidavits.

Despite this well-standing principle, the Government improperly filed a declaration from Juan L. Schaening Perez in an attempt to explain the process and provide conclusions about what was considered and determined and why. Perez Dec., ECF 17-2. That Declaration is an improper post-hoc rationalization, created for this litigation outside of the administrative record, and thus not properly part of this Court's review. The D.C. Circuit has squarely rejected this kind of effort, and this Court should do the same. *AT&T Info. Sys., Inc. v. Gen. Servs. Admin.,* 810 F.2d 1233, 1236 (D.C. Cir. 1987); *Rodway v. U.S. Dep't of Agric.*, 514 F.2d 809, 816–17 (D.C. Cir. 1975).

**V. Plaintiffs Should Not Be Required to Post a Bond.**

District courts are vested with broad discretion to "determine the appropriate amount of an injunction bond, including the discretion to require no bond at all." *Am. First Legal Found. v. Becerra*, 2024 WL 3741402, at *16 n.11 (D.D.C. Aug. 9, 2024) (internal quotations omitted). "Exercising that discretion, federal courts typically require substantial bonds only in suits between private parties with significant monetary interests at stake." *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 4 (D.D.C. 2025) (quotation omitted).

[5] In contrast, evidence outside the administrative record is permissible to establish standing. *See Defs. of Wildlife v. Jewell*, 2014 WL 9883926, at *1 (D.D.C. Mar. 20, 2014).

The Government's assertion that a bond is necessary here is without merit. Opp., 44. Courts have recognized the irony of allowing the Government to weaponize alleged financial risk to prevent injured parties from recouping wrongfully withheld funds. *See Urb. Sustainability Dirs. Network v. U.S. Dep't of Agric.*, 2025 WL 2374528, at *39 (D.D.C. Aug. 14, 2025), *app'l filed*. It would be unjust to require Plaintiffs—six of whom are elderly Medicare beneficiaries—to post a bond simply to vindicate their rights against unlawful conduct." *Fed. Educ. Ass'n v. Trump*, 795 F. Supp. 3d 74, 103 (D.D.C. 2025), *app'l filed*; *see also Harris Cnty. v. Kennedy*, 786 F. Supp. 3d 194, 221-22 (D.D.C. 2025) (denying bond request).

The Government's reliance on *NTEU v. Trump* is misplaced. Although the court there "clarif[ied] that injunction bonds are generally required," since *NTEU*, meaningful bonds remain the exception, not the rule. 2025 WL 1441563, at *3 n.4 (D.C. Cir. May 16, 2025). Of the nineteen courts in this District to issue substantive rulings on Rule 65 bond requests post-*NTEU*, only one has ordered a non-nominal bond—and that amount was at the plaintiff's request. *Adya LLC v. U.S. Drug Enforcement Admin.*, 2026 WL 797339, at *12 (D.D.C. Mar. 23, 2026). The remaining courts have either denied bond or imposed only nominal amounts.[6] *See, e.g., Council for Opportunity in Educ. v. U.S. Dep't of Educ.*, 2026 WL 120984, at *17–18 (D.D.C. Jan. 16, 2026) (no bond); *Taylor v. Trump*, 2026 WL 396844, at *17 (D.D.C. Feb. 11, 2026) ($1 bond).[7]

## CONCLUSION

For the foregoing reasons and those set forth in Plaintiffs' Motion, the Court should grant relief requested, including the requested stay and preliminary injunction.

---

[6] Should this Court require a bond, Plaintiffs request that it be in the amount of one U.S. dollar.

[7] Plaintiffs included a request for permanent injunction, because the parties had been discussing potentially agreeing to an expedited production of the administrative record and briefing schedule. Since that did not occur, Plaintiffs do not disagree with the Government that entry of a permanent injunction at this time would be premature. Opp., 45.

Dated: March 27, 2026

Respectfully submitted,

HOLLAND & KNIGHT LLP

/s/ *Lynn Estes Calkins*

Lynn Estes Calkins (DC Bar No. 445854)
Zachary P. Lundgren (DC Bar No. 90012330)
800 17th Street, N.W., Suite 1100
Washington, D.C. 20006
Phone: (202) 955-3000
lynn.calkins@hklaw.com
zachary.lundgren@hklaw.com

Andrew Solinger (DC Bar No. 1014742)
511 Union Street, Suite 2700
Nashville, TN 37219
Phone: (615) 850-8062
andrew.solinger@hklaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on the 27th day of March, 2026, the foregoing was served electronically via CM/ECF upon all counsel of record.

/s/ *Lynn Estes Calkins*
Lynn Estes Calkins